UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SAMUEL N. EDEH,

Plaintiff,

v.

Civil No. 12-1301 (JNE/FLN)
ORDER

EQUIFAX INFORMATION SERVICES, LLC,

Defendant.

This case is before the Court on a Report and Recommendation and an Order issued by the Honorable Franklin L. Noel, United States Magistrate Judge, on October 11, 2012. In the Report and Recommendation, the magistrate judge recommended that Plaintiff's motion for partial summary judgment and for permanent or temporary injunction injunction [Docket No. 5] be granted in part and denied in part, that Defendant's motion to strike Plaintiff's motion for a permanent or temporary injunction [Docket No. 19] be denied as moot, and that Defendant's motion for summary judgment [Docket No. 26] be granted in part and denied in part. In the Order, the magistrate judge denied Equifax's motion for reimbursement of costs and fees incurred due to Plaintiff's failure to attend the September 14, 2012 motions hearing [Docket No. 64]. Both parties filed objections and responses to the Report and Recommendation; Equifax also objected to the Order. With respect to the Report and Recommendation, the Court has conducted a *de novo* review of the record. *See* D. Minn. LR 72.2(b). Based on that review, the Court adopts the recommendations that Counts VI, VII, and VIII of the Complaint be dismissed, that Plaintiff's motion for injunctive relief be denied, and that Defendant's motion to strike Plaintiff's motion for a permanent or temporary injunction be denied. The Court declines to adopt the other recommendations, as explained in more detail below.

## I. BACKGROUND[1]

Defendant Equifax Information Services, LLC ("Equifax") is a consumer reporting agency ("CRA") within the meaning of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. Equifax maintains credit information on numerous consumers throughout the United States, including Plaintiff Samuel Edeh ("Edeh"). In May 2011, Edeh requested that a "credit freeze" (or "security freeze") be placed on his Equifax consumer credit file, which prevented creditors and other third parties from obtaining Edeh's credit report from Equifax. On September 15, 2011, Edeh filed his first lawsuit against Equifax (*Edeh I*), alleging various violations of the FCRA, including allegations that the Defendant reported inaccurate information related to one of Edeh's credit card accounts. *See Edeh v. Equifax Info. Servs., LLC, et al.*, Civil No. 11-2671 (SRN/JSM).

When a consumer files a lawsuit against Equifax in which the accuracy of the information contained within the consumer's credit file is disputed, Equifax maintains a policy of taking that consumer's credit file "offline" until the dispute is resolved. This is referred to as Equifax's "offline policy." When a consumer's credit file is offline, it continues to exist within Equifax's consumer database, but it is unavailable to creditors and other third parties. It does not become available to such third parties until Equifax places the file back "online," regardless of whether or not a credit freeze is in place. While it is offline, the consumer's credit file is also unavailable to Equifax personnel who are responsible for responding to routine customer requests for credit file disclosures. During the time a consumer's credit file is offline, if that consumer requests a copy of his credit file, it is Equifax's procedure to route the request to its

[1] Unless otherwise stated, the facts described below are undisputed or are those that a reasonable fact-finder could find when viewing the record in the light most favorable to Edeh.

internal consumer department. Members of that department are supposed to coordinate with outside counsel to arrange for delivery of the credit file to the consumer.

Pursuant to its offline policy, Equifax took Edeh's file offline when Edeh filed *Edeh I*, a case in which he disputed the accuracy of information contained within his credit file. After litigation commenced, and during the time Edeh's file was offline, Edeh contacted Equifax on numerous occasions to request a copy of his credit file and credit score. He also made several requests to remove the credit freeze. Equifax, however, did not send Edeh a copy of his credit file and credit score, nor did it remove the credit freeze.[2]

On January 13, 2012, Edeh applied for a loan with Mayo Employees Federal Credit Union (MEFCU). On February 13, 2012, MEFCU notified Edeh that it was unable to extend credit to him because it was "unable to obtain credit report" from Equifax. In March 2012, MEFCU again attempted to obtain Edeh's credit file from Equifax, but received the following message: "Consumer requested security freeze on his/her file – report unavailable." A MEFCU loan officer notified Edeh that he was "unable to obtain the needed information" from Edeh's credit file, and so he could not process Edeh's loan application. On March 30, 2012, Think Mutual Bank attempted to obtain a copy of Edeh's Equifax credit file in order to complete a credit application, but was unable to do so. Without the credit report, Think Mutual Bank could not complete the application. In April 2012, Edeh applied for a Discover credit card, but because Discover was unable to access Edeh's credit report, it was unable to process his application.

[2] Edeh filed this lawsuit on May 31, 2012. On July 6, 2012, Equifax sent Edeh a copy of his credit file and credit score, and also removed the credit freeze. On July 20, 2012, Equifax refunded the fees, totaling $12.95, that Edeh had paid to cover the costs of the credit report and score and the lifting of the credit freeze. Edeh's credit file has also been placed back online.

## II. DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmoving party must substantiate his allegations by "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotation marks omitted).

### A. Plaintiff's Motion for Injunctive Relief

The Court adopts the magistrate judge's recommendation that Plaintiff's motion for injunctive relief be denied. As stated in the Report and Recommendation, the FCRA does not allow consumers to seek injunctive relief. *See Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268 (5th Cir. 2000). Moreover, as explained below, Edeh has not established the requisite public benefit to seek injunctive relief under Minnesota's private attorney general statute. *See Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000).

## B. Plaintiff's Claim Under Minnesota Statutes § 13C.016 (Count I)

Under Minnesota law, a person may elect to place a security freeze on his consumer report,[3] which prevents CRA's from releasing any information contained within the consumer report to a third party "in connection with the extension of credit or the opening of an account, without prior express authorization from the consumer." Minn. Stat. § 13C.016, subdivs. 1-2. The consumer may also request that the security freeze be temporarily lifted or permanently removed, by providing certain information to the CRA. *Id.*, subdiv. 4. A CRA must comply with the request to lift or remove the freeze within three business days. *Id.* Edeh alleges that Equifax violated this statute by failing to remove the credit freeze from his consumer file after repeated requests to do so.

A private individual injured by a violation of Minnesota Statutes § 13C.016, subdiv. 4(e) may bring a civil action under Minnesota's private attorney general statute, Minn. Stat. § 8.31, subdiv. 3a. *See* Minn. Stat. § 13C.04. "[T]he Private AG Statute applies only to those claimants who demonstrate that their cause of action benefits the public." *Ly*, 615 N.W.2d at 314; *see also Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 899 (Minn. 2012) (stating that "private litigants must establish 'that their cause of action benefits the public' in order to proceed with a claim under section 8.31, subdivision 3a" (citation omitted)). An alleged violation affecting only one person "does not advance state interests and enforcement has no public benefit." *Ly*, 615 N.W.2d at 314; *see also Davis v. U.S. Bancorp*, 383 F.3d 761, 768 (8th Cir. 2004) (reasoning that "[t]he class of plaintiffs under the private attorney general statute would be limitless if we

---

3 A "consumer report" is "a written, oral, or other communication of information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living that is used or expected to be used or collected in whole or in part for . . . the purpose of serving as a factor in establishing the consumer's eligibility for credit . . . ." Minn. Stat. § 13C.001, subdiv. 3(a)(1).

assumed that one individual's negative experience with a company was necessarily duplicated for every other individual," and holding that where the plaintiff "had a private transaction with [the defendant]" involving "poor communication and confusion on both sides," there was no evidence of a public benefit). Edeh has presented evidence of only his personal transaction with Equifax, but there is no evidence in the record that this cause of action benefits the public.

Further, the Minnesota attorney general statute only allows a "person injured by a violation" to bring a civil action and recover damages. Minn. Stat. § 8.31, subdiv. 3a. Edeh's alleged injuries—i.e., his inability to get credit—resulted from three creditors being unable to obtain his credit file. It is undisputed that regardless of whether or not there was a credit freeze in place, the creditors would have been unable to obtain Edeh's credit file because of Equifax's offline policy. Thus, there is no evidence from which a reasonable jury could find that Edeh's alleged injuries were caused by a violation of the Minnesota consumer security freeze statute.

For those reasons, summary judgment in favor of Equifax on Count I is appropriate.

**C. Plaintiff's Claim Under 15 U.S.C. § 1681i (Count II)**

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). Section 1681i of the FCRA provides that when a consumer notifies a CRA that the consumer is disputing "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency," the CRA "shall, free of charge, conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . .

before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer." 15 U.S.C. § 1681i(a)(1)(A).

Section 1681i of the FCRA only governs disputes regarding "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency." *Id.* The question is whether the presence of a security freeze is considered an "item of information" in the consumer's file. Equifax asserts that a security freeze is not information contained within a consumer's file, but rather merely indicates the status of the consumer's file—i.e., whether the file, and all of the consumer information in that file, is accessible to third parties. "The term 'file,' when used in connection with information on any consumer, means all of the information *on that consumer* recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(f) (emphasis added). A security freeze is a "notice placed in a consumer's consumer report, at the request of the consumer . . . , that prohibits the consumer reporting agency from releasing the consumer report *or any information from it* . . . ." Minn. Stat. § 13C.016, subdiv. 1(b) (emphasis added). When a security freeze is in place, a CRA may nevertheless advise a third party that the freeze is in effect, even though the CRA may not release "information" regarding that consumer. *See id.* It is therefore apparent that a security freeze is not itself information on a consumer, but rather is a status notification that prevents the release of any information on a consumer. Section 1681i, therefore, does not apply to disputes regarding the presence of a security freeze.

Even if the presence of a security freeze did constitute an "item of information" within a consumer's file, Edeh's claim still fails. Although the Eighth Circuit Court of Appeals has not addressed this issue, a number of circuits have held that a claim under § 1681i requires a showing that the information in the credit file was inaccurate. *See DeAndrade v. Trans Union*

*LLC*, 523 F.3d 61, 67 (1st Cir. 2008) ("[W]ithout a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail."); *Kuehling v. Trans Union, LLC*, 137 F. App'x 904, 908 (7th Cir. 2005) ("Without evidence of some inaccuracy in the Trans Union report or reinvestigation, Kuehling cannot establish that Trans Union violated the FCRA-either § 1681e(b) *or* § 1681i(a)(1)(A)."); *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) ("In the absence of evidence that Experian disclosed incorrect information . . . to a third party, [plaintiff] cannot even show that it violated the Act's reinvestigation requirement . . . ."); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) ("[A] section [1681i] claim is properly raised when a particular credit report contains a *factual* deficiency or error . . . ."); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 713 (3d Cir. 2010) (explaining that in order for the plaintiff to establish that the defendant is liable for failing to investigate a dispute under § 1681i, the plaintiff must establish that the defendant would have discovered a discrepancy); *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008) (suggesting that "a prima facie showing of inaccurate reporting" is required by § 1681i).

There is no evidence in the record that Edeh's Equifax credit file contained inaccurate information. The allegedly inaccurate information at issue in this case is the presence of a credit freeze on Edeh's consumer file. Edeh acknowledges that in May 2011, he placed the credit freeze on his consumer credit file. He outlines his attempts to remove the credit freeze, and states that despite his requests to remove the freeze, Equifax failed to remove it. *See* Compl. ¶ 91 (stating that Equifax "never removed the credit freeze"); *id.* ¶ 107 ("Defendant failed to remove the credit freeze from Plaintiff's consumer credit file . . . ."). Because Edeh was unable to remove the credit freeze, the credit freeze, in fact, remained in place. Thus, the notice of a

credit freeze within Edeh's file was technically accurate, although perhaps the presence of the freeze was no longer desired.

For the reasons stated above, summary judgment in favor of Equifax on the § 1681i claim is appropriate.

**D. Plaintiff's Claim Under 15 U.S.C. § 1681g (Count III )**

The FCRA provides that "[e]very consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer . . . all information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The Act also provides for the disclosure of consumers' credit scores. *Id.* § 1681g(f). Sections 1681n and 1681o create civil liability when a CRA fails to comply with any of its requirements, including its disclosure requirements. *Id.* §§ 1681n, 1681o; *see also Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir. 1980). Under § 1681n, a CRA whose noncompliance is "willful" may be liable for actual or statutory damages; under § 1681o, a CRA whose noncompliance is merely "negligent" may be liable for actual damages only. 15 U.S.C. §§ 1681n, 1681o.

In order to maintain a claim for negligent noncompliance, a plaintiff must show "actual damages sustained by a consumer as a result of the failure." *Id.* § 1681o(a)(1); *see also Hauser v. Equifax, Inc.*, 602 F.2d 811, 817 (8th Cir. 1979) (affirming a directed verdict in favor of Equifax where "there was insufficient evidence to support of finding of willful noncompliance," and "there was no evidence of damage" as a result of Equifax's failure to comply with the FCRA); *see also Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'"). There is no evidence that Edeh's actual

damages—his inability to obtain credit[4]—were caused by Equifax's failure to provide him with his credit report and credit score. The alleged denials of credit resulted from the creditors' inability to obtain Edeh's credit report. It is undisputed that Edeh's credit report would have remained unavailable to those creditors as a result of Equifax's offline policy, regardless of whether or not Equifax had provided Edeh with the requested credit disclosures. Further, there is no evidence that anything contained within Edeh's credit file was inaccurate. "The purpose of the Act's disclosure requirement is to provide the consumer with an opportunity to dispute the accuracy of information in his file." *Hauser*, 602 F.2d at 817; *see also DeAndrade*, 523 F.3d at 67 ("The FCRA is intended to protect consumers against the compilation and dissemination of *inaccurate* credit information." (emphasis in original)); *Equifax Inc. v. F. T. C.*, 678 F.2d 1047, 1048 (11th Cir. 1982) ("The stated purpose of the FCRA is 'to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report.'" (citation omitted)). Absent evidence of actual damages resulting from Equifax's failure to provide the requested disclosures, Edeh's claim under 15 U.S.C. § 1681o for negligent noncompliance fails.

A claim for "willful noncompliance," however, does not require proof of actual damages. *See* 15 U.S.C. § 1681n(a)(1)(A) (providing for "any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000" (emphasis added)). "Willfulness" under the FCRA requires a knowing or a reckless violation of the statute's requirements. *See Safeco*, 551 U.S. at 57. The Court finds that there is a genuine dispute of material fact regarding whether Equifax's failure to provide Edeh with the requested

---

4 Although Edeh alleges to have also suffered emotional distress, there is no evidence in the record to support such a claim. *See Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir. 1999) ("An award of damages for emotional distress must be supported by competent evidence of "genuine injury." (quoting *Carey v. Piphus*, 435 U.S. 247 , 264 n.20 (1978))).

credit information was willful. On one hand, Edeh himself presented evidence of the various attempts made by Equifax personnel to assist him in obtaining his consumer credit file. A jury might find that the evidence shows only confusion and miscommunication between the various departments within Equifax. On the other hand, there is evidence that on eleven different occasions between November 2011 and May 2012, Edeh attempted to contact Equifax to obtain his consumer credit file. Equifax asserts that when a consumer whose credit file is offline requests credit disclosures, Equifax's policy is to route the request to its internal consumer department, where the request is then supposed to be communicated to Equifax's outside counsel who then coordinates the delivery of the file to the consumer. It appears as though Equifax's policy failed in this case. Despite Edeh's numerous attempts to obtain his file, his request was either not routed to the correct department, was not communicated to outside counsel, or outside counsel did not arrange for delivery of the credit file to Edeh. Equifax's contravention of its own stated policy, on numerous occasions, is evidence from which a reasonable inference of willful noncompliance might be drawn.[5]

Because of Edeh's failure to prove actual damages caused by Equifax's noncompliance with its disclosure requirements, Count III is dismissed to the extent it asserts claims of negligent noncompliance under 15 U.S.C. § 1681o. Count III survives to the extent it asserts claims of willful noncompliance and seeks statutory damages under 15 U.S.C. § 1681n.

---

[5] Equifax contends that a reasonable person in Edeh's position would have attempted to contact Equifax's counsel for assistance, rather than repeatedly contacting the Equifax personnel who routinely deal with credit disclosure inquiries. The Court is not persuaded by Equifax's attempt to shift the blame for the failed disclosures to Edeh. First, Equifax provides no evidence to support its argument. Second, Equifax's stated policy is that its own personnel are supposed to route the consumer's request to another department—the policy does not require the consumer to, on his own without any guidance, contact Equifax's counsel.

**E. Plaintiff's Claim Under 15 U.S.C. § 1681j (Count IV )**

Section 1681j provides that "consumer reporting agencies . . . shall make all disclosures pursuant to section 1681g of this title once during any 12-month period upon request of the consumer and without charge to the consumer." 15 U.S.C. § 1681j(a)(1)(A). Section 1681j(b) provides that a CRA "shall make all disclosures pursuant to section 1681g of this title without charge to the consumer if, not later than 60 days after receipt by such consumer of a notification pursuant to section 1681m of this title . . . stating that the consumer's credit rating may be or has been adversely affected, the consumer makes a request under section 1681g of this title." *Id.* § 1681j(b).

There is no evidence currently before the Court that Edeh was entitled to a free annual credit disclosure from Equifax at the time of his requests. For example, there is nothing in the record indicating if or when Edeh had previously made a request for a free annual disclosure from Equifax within the previous twelve-month period. There is also no evidence that Edeh had received any notification that a person took "adverse action . . . based in whole or in part on any information contained in a consumer report." *Id.* § 1681m(a). The "adverse actions" alleged in this case were the denials of credit based on the creditors' inability to obtain Edeh's consumer report, not based on information contained in Edeh's consumer report. For those reasons, summary judgment on Count IV in favor of Equifax is granted.[6]

[6] Section 1681j pertains to the fees CRAs may charge for disclosures, and requires that at some times the disclosures must be provided for free. The requirement to provide disclosures upon request is found in § 1681g. Because Equifax has subsequently provided Edeh with the requested disclosures and has refunded him any fees he paid, the Court agrees with the magistrate judge that Count IV is moot. This provides another reason for dismissing this claim.

## F. Intentional Interference with Prospective Contractual Relations (Count V)

Edeh alleges that he reasonably expected prospective economic benefits from various creditors and entities, and that Equifax's conduct interfered with those relationships, causing Edeh to suffer from credit denials or other economic and noneconomic losses. The action Edeh points to that forms the underpinning for this claim is Equifax's failure to remove the credit freeze from Edeh's file. *See* Pl.'s Opp. to Def.'s Mot. Summ. J. 19, ECF No. 34.

Intentional interference claims are preempted by the FCRA unless there is evidence of "false information furnished with malice or willful intent to injure" the consumer. 15 U.S.C. § 1681h(e); *see also Thornton*, 619 F.2d at 703 ("[A] consumer may not bring any such action or proceeding unless the relevant information is false and furnished 'with malice or willful intent to injure such consumer.'" (quoting 15 U.S.C. § 1681h(e))). The only information Equifax "furnished" was its disclosure to the three creditors that there was a security freeze on Edeh's file and that the file was unavailable. There is no evidence in the record from which a reasonable jury might infer that Equifax furnished that information with any malice or willful intent to injure Edeh. Moreover, as previously explained, there is no evidence that the information disclosed was actually false. There was, in fact, a consumer-requested credit freeze on Edeh's file—a freeze that Edeh acknowledges he was unable to remove. Thus, despite his attempts to remove the freeze, the credit freeze continued to remain in place, and the disclosure of such a fact was not false.

Further, to succeed on an intentional interference claim, Edeh must prove that Equifax "(1) 'intentionally and improperly interfer[ed] with another's prospective contractual relation' (2) by either '(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective

relation.'" *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, A12-0713, 2013 WL 141700, at *6 (Minn. Ct. App. Jan. 14, 2013) (quoting *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 633 (Minn. 1982)). This claim "protects an interest in the reasonable expectation of economic advantage." *Id.* (internal quotation marks omitted). To establish a claim for intentional interference with prospective contractual relations, Edeh must prove both improper conduct and a reasonable expectation of prospective economic advantage. *See id.* at *6-*8.

Edeh alleges that he applied for credit with three institutions, each of which rejected his application. There is no evidence in the record, however, that Edeh had a reasonable expectation of obtaining credit from these institutions or that they would have extended credit to him had they received his credit report. *See Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1506 (8th Cir. 1992) (stating that "[w]ith regard to causation, [the plaintiff] must prove by a preponderance of the evidence that [it] would not have suffered its alleged losses but for [the defendant's] wrongful conduct"). There is also no evidence that Equifax's refusal to provide Edeh's credit report to the creditors was improper. It is undisputed that Edeh's credit report was unavailable for two reasons: (1) the continued presence of the security freeze, and (2) Equifax's offline policy. Even if Equifax's failure to remove the security freeze was wrongful, there is no evidence that Equifax's implementation of its offline policy, and resulting unavailability of Edeh's consumer file, was improper. Edeh was, and apparently still is, disputing the accuracy of information contained within his file through his initial lawsuit against Equifax, *Edeh I*. There is no evidence in the record that Equifax's offline policy, which prevents the release of disputed information to third parties, is itself improper or that the policy was applied improperly in this particular situation.

Finally, "[t]o prevail on a tort claim, a plaintiff must show that the defendant's tortious actions caused the plaintiff's losses." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). It is undisputed that Edeh was denied credit because the creditors were unable to obtain his credit report. It is also undisputed that as a result of Equifax's offline policy, Edeh's credit report would have been unavailable to creditors, regardless of whether or not a security freeze was in place. Thus, there is no evidence that Equifax's failure to remove the security freeze, and subsequent disclosure of the presence of the security freeze, caused any of Edeh's alleged losses.

For all of the above reasons, Edeh's intentional interference claim fails and summary judgment in favor of Equifax on this claim is warranted.

**G. Unjust Enrichment (Count VI)**

Equifax moved for summary judgment on Edeh's unjust enrichment claim, and Edeh did not oppose this motion. Edeh did not object to the portion of the Report and Recommendation that recommended dismissal of this claim. Therefore, for the reasons stated in the Report and Recommendation, and for the reasons articulated in Equifax's memorandum in support of its summary judgment motion, ECF No. 28, Count VI is dismissed.

**H. Negligence Claims (Counts VII and VIII)**

Edeh has asserted common law claims of gross negligence and ordinary negligence. The FCRA preempts such claims against CRAs except in cases of malice or willful intent to injure the consumer. *See* 15 U.S.C. § 1681h(e). "The malice or willful intent to injure contemplated by § 1681h(e) is of a higher degree than that which supports a claim of statutory or punitive damages under § 1681n." *Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1117 (D. Minn. 2004); *see also Thornton*, 619 F.2d at 705 ("The same standard of proof as required in

section 1681h(e), however, is not required for allegations of noncompliance with the provisions and requirements of the Act (sections 1681n and 1681o ).”); *Edeh v. Equifax Info. Servs., LLC*, No. 11-CV-2671 (SRN/JSM), 2012 WL 4358646, at *9 (D. Minn. Sept. 21, 2012); *Schaffhausen v. Bank of Am., N.A.*, 393 F. Supp. 2d 853, 860 (D. Minn. 2005); *Olwell v. Med. Info. Bureau*, CIV. 01-1481 JRTFLN, 2003 WL 79035 (D. Minn. Jan. 7, 2003). There is no evidence in the record to support this high degree of malice or willful intent to injure. The Court therefore adopts the recommendation that these claims be dismissed.[7]

**I. October 11 Order**

In the Order dated October 11, 2012, the magistrate judge denied Equifax’s motion for reimbursement of costs and fees incurred due to Plaintiff’s failure to attend the September 14, 2012 motions hearing. Equifax objected. Having reviewed the objections, the Court vacates the October 11 Order. *See* D. Minn. LR 72.2(a) (“The District Judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the Magistrate Judge’s order found to be clearly erroneous or contrary to law. The District Judge may also reconsider any matter sua sponte.”). Equifax may raise this issue again at the conclusion of this case, and the Court will entertain such a motion at that time.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiff’s motion for partial summary judgment and for permanent or temporary injunction [Docket No. 5] is DENIED.

---

[7] Moreover, to establish a claim for negligence, Edeh must prove that Equifax’s breach of duty caused him to suffer injury. *See Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn. 1982) (setting forth the elements necessary to maintain a claim for negligence). As fully discussed above, Edeh has failed to show that Equifax’s allegedly wrongful conduct caused him actual damages. This provides another reason to dismiss the negligence claims.

2. Defendant's motion to strike Plaintiff's motion for permanent or temporary injunction [Docket No. 19] is DENIED.

3. Defendant's motion for summary judgment [Docket No. 26] is GRANTED IN PART and DENIED IN PART.

4. Summary judgment in favor of Defendant is GRANTED as to Counts I, II, IV, V, VI, VII, and VIII. Counts I, II, IV, V, VI, VII, and VIII are dismissed.

5. Summary judgment in favor of Defendant is GRANTED on Count III only to the extent that Count III asserts a claim of negligent noncompliance under 15 U.S.C. § 1681o and seeks actual damages. Summary judgment is DENIED to the extent that Count III asserts claims of willful noncompliance and seeks statutory damages under 15 U.S.C. § 1681n.

6. The Order dated October 11, 2012 [Docket No. 69] is VACATED. Equifax may raise the issue of costs and fees at the conclusion of this case.

Dated: January 23, 2013

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge